THE HONORABLE JOHN C. COUGHENOUR

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| DISTRIBUIDORA INDUSTRIAL DE CALZADO S.A., d/b/a BROOKS RUNNING COSTA RICA,<br><br>Plaintiff,<br><br>v.<br><br>BROOKS SPORTS INC., *et al.*,<br><br>Defendants. | CASE NO. C18-0501-JCC<br><br>ORDER |

This matter comes before the Court on Plaintiff's motion to dismiss Defendant Brooks Sports Inc.'s counterclaim (Dkt. No. 36). Having thoroughly considered the parties' briefing and the relevant record, the Court finds oral argument unnecessary and hereby DENIES the motion for the reasons explained herein.

**I.    BACKGROUND**

Plaintiff and Defendant entered into a Distributor Agreement (the "Agreement") in 2015. (*See* Dkt. Nos. 33 at 4, 34 at 3.) The Agreement awarded Plaintiff a five-year term as Defendant's exclusive distributor in Costa Rica and Guatemala. (Dkt. No. 33 at 30–32.) On June 30, 2016, Defendant expanded Plaintiff's exclusive distribution rights to include Nicaragua, El Salvador, Honduras, Belize, and Ecuador (collectively with Costa Rica and Guatemala, "Plaintiff's region"). (*Id.* at 46.) Plaintiff claims it operated four "concept stores" to sell

Defendant's products; Defendant denies this. (*Id.* at 3; *see also* Dkt. No. 34 at 2–3.)

On June 20, 2017, Plaintiff informed Defendant that Plaintiff's competitor Harari, Inc. was obtaining Defendant's products from a different distributor and selling them in Guatemala in violation of Plaintiff's exclusive distribution rights. (*See* Dkt. No. 33 at 6.) In 2017, Defendant's Latin America and Asia Territory Manager Justin Dempsey-Chiam informed Plaintiff that Defendant was considering granting Harari the distribution rights for Panama and Colombia. (*Id.*; Dkt. No. 34 at 4.) Plaintiff states that it informed Dempsey-Chiam of its reluctance to do business with Harari because of Harari's history of dishonesty and the likely harms to Plaintiff's business. (*See* Dkt. No. 33 at 7.) In November 2017, Defendant announced its decision to make Harari the new exclusive distributor for Panama, the Caribbean, and Colombia. (*Id.* at 8.) Defendant later terminated the Agreement with Plaintiff and made Harari its exclusive distributor in Plaintiff's region. (*Id.* at 11; Dkt. No. 34 at 7.)

The Agreement included an annual Minimum Purchase Requirement ("MPR"), defined as "a target for the purchase of Products by [Plaintiff] under this Agreement." (*Id.* at 31.) "Products" is defined as "all [Defendant] Brooks-branded products, including footwear, apparel, and accessories." (*Id.*) The Agreement quantifies the MPR in "pairs." (*See id.* at 30.)

On June 20, 2017, Plaintiff sent Defendant an order for 3,018 pairs of Brooks shoes to be delivered in October and November 2017 (the "Order"). (*Id.* at 8; Dkt. No. 34 at 5.) Over the course of several months, Defendant delayed the Order on five separate occasions, in violation of the Agreement. (Dkt. No. 33 at 8–10.) With the Order still not fulfilled, on January 3, 2018, Defendant terminated Plaintiff for failure to meet its 2017 MPR. (*Id.* at 48–49.)

Plaintiff sued Defendant for breach of contract and breach of implied covenant of good faith and fair dealing. Plaintiff alleges that it met the 2017 MPR and that Defendant failed to comply with the Agreement. (Dkt. No. 33 at 20–26, 31–32, 38–39.) Defendant counterclaimed for breach of contract. (Dkt. No. 34 at 19–20.) Defendant alleges that after it terminated the Agreement, Plaintiff continued to promote, market, and sell Defendant's products beyond the

six-month grace period allowed under the Agreement. (*Id*. at 19.) Defendant also claims that Plaintiff continued to use Defendant's trademarks, logos, and trade dress in stores and on social media, and failed to "return or destroy" promotional materials. (*Id.*) Defendant asserts that Plaintiff conducted the breach "in its stores and on social media." (*Id.*)

Plaintiff moves to dismiss Defendant's counterclaim because it does not identify: (1) Plaintiff's stores where alleged breach occurred; (2) the promotional materials allegedly used by Plaintiff in committing the breach; and (3) the form of Defendant's damages and how the Plaintiff caused such damages. (Dkt. No. 36.)

## II. DISCUSSION

### A. Motion to Dismiss Legal Standard

A claim for relief must include "a short and plain statement of the claim showing that the pleader is entitled to relief; and . . . a demand for the relief sought . . . ." Fed. R. Civ. P. 8(a). A short and plain statement need not include factual minutiae so long as the statement puts a party on fair notice of the claim and its grounds. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

A party may move to dismiss for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In reviewing a motion to dismiss, the Court accepts all factual allegations as true and views them in the light most favorable to the nonmoving party. *Vasquez v. L.A. County*, 487 F.3d 1246, 1249 (9th Cir. 2007). To survive a motion to dismiss, a claim must be "plausible" in that the facts pled "allow[] the court to draw the reasonable inference that the [accused party] is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The claim must go beyond a conclusory and "formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555. A claim cannot be purely speculative, but "may proceed even if . . . recovery is very remote and unlikely." *Id.* at 556–57. Determining plausibility is "context-specific" and "requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. The plausibility requirement serves to "minim[ize] expenditure of time and money by the parties and the court." *Twombly*, 550 U.S. at 558.

### B. Defendant's Breach of Contract Counterclaim

To assert breach of contract under Washington law, a party must prove the existence of "an agreement between the parties, a parties' duty under the agreement, and a breach of that duty." *Fid. & Deposit Co. of Maryland v. Dally*, 201 P.3d 1040, 1044 (Wash. Ct. App. 2009). The Court does not evaluate the contract at issue on a motion to dismiss, for doing so would be "premature." *Harvey v. Centene Mgmt. Co. LLC*, 357 F. Supp. 3d 1073, 1085 (E.D. Wash. 2018). To achieve plausibility, a party "must allege, at a minimum, the [specific] terms of the contract at issue (whether express or implied), the precise duty that was breached, and the damages which resulted from the breach." *Chelan Cty. v. Bank of Am. Corp.*, 2014 WL 3101935, slip op. at 1 (E.D. Wash. 2014); *see also BP West Coast Prods., LLC v. Shalabi*, Case No. C11-1341-MJP, Dkt. No. 64 at 8 (W.D. Wash. 2012).

Defendant's counterclaim asserts sufficient factual allegations that support all elements of a breach of contract claim. It is undisputed that the Parties had a contract under which Plaintiff had a duty, and Defendant points to the specific terms that Plaintiff allegedly breached. (Dkt. Nos. 33 at 30; 34 at 20.) Defendant pled factual allegations from which the Court may reasonably infer that Plaintiff breached the provisions at issue. (*Id.* at 37; *see also* Dkt. No. 34 at 16–19.) Defendant has plausibly alleged that damages arose from Plaintiff's alleged breach. Therefore, Defendant has stated a plausible counterclaim for breach of contract. *Iqbal*, 556 U.S. at 678.

#### i. Contradictory Statement

Plaintiff contends that Defendant contradicts itself because it initially denied that Plaintiff operated "stores," and now claims that Plaintiff sold Defendant's products in Plaintiff's stores post-termination. (*See* Dkt. No. 36 at 5–6; *see also* Dkt. Nos. 33 at 3–4, 22; 34 at 2–3, 13.) Defendant does not completely deny that Plaintiff operated stores: Defendant states a lack of sufficient knowledge or information to answer Plaintiff's claims regarding store closures, and also distinguishes between Defendant's characterization of "stores" and Plaintiff's

characterization of "concept stores." (*See* Dkt. No. 34 at 13; *see also* Dkt. No. 38 n. 2.) Defendant also claims that Plaintiff breached the contract by using its trademarks, logos, and trade dress on social media, claims that are not contradicted elsewhere in Defendant's answer. (*See* Dkt. No. 34.)

Moreover, a self-induced paradox contained in Defendant's answer and counterclaim is not fatal to its counterclaim. A party "may state as many claims or defenses as it has, regardless of consistency." Fed. R. Civ. P. 8(d)(3). The Federal Rules of Civil Procedure do not preclude a party from "filing successive pleadings that make inconsistent or even contradictory allegations . . . ." *PAE Gov't Servs., Inc. v. MPRI, Inc.*, 514 F.3d 856, 860 (9th Cir. 2007); *see also Vernon v. Qwest Commc'ns Int'l, Inc.*, C08-1516-TSZ, Dkt. No. 65 at 12 (W.D. Wash. 2009) (rejecting "defendants' argument that plaintiffs' unjust enrichment claim should be dismissed because plaintiffs simultaneously allege that their rights are governed by an express contract," based on plaintiff's right to argue in the alternative); *see also Fidelitad, Inc. v. Insitu, Inc.*, 2014 WL 5421214, slip op. at 4 (E.D. Wash. 2014) ("At the pleading stage it does not matter that [claims] are potentially inconsistent."). Thus, a contradiction between Defendant's answer and counterclaim does not warrant dismissal of Defendant's counterclaim.

### ii. *Failure to Specify Damages*

Defendant seeks damages "in an amount to be proven at trial." (Dkt. No. 34 at 20.) So does Plaintiff. (*See* Dkt. No. 33 at 27.) Such broad claims for damages are permissible under Washington law, and the failure to provide specific damages values at the complaint and counterclaim stage does not justify dismissal. *See Harvey v. Centene Mgmt. Co.*, 357 F. Supp. 3d 1073 (E.D. Wash. 2018); *see also Larson v. Union Inv. & Loan Co.*, 10 P.2d 557, 559-60 (Wash. 1932) (citing *Story Parchment Co. v. Paterson Parchment Paper Co.*, 282 U.S. 555 (1931)) (highlighting a "fundamental" distinction between "cases in which the evidence as to the fact of the damage is uncertain and those in which the fact of damage is clearly established, the uncertainty existing only as to the extent of the damage," and holding that cases of the latter type

call for "a more liberal rule [to] be applied in allowing the court or a jury to determine the amount of the damage . . . ."); *see also Leopona, Inc. v. Cruz for President*, Case No. C16-0658-RSM, Dkt. No. 9 at 7, 13 (W.D. Wash. 2016) (denying defendants' motion to dismiss, made partially on grounds that plaintiffs could not support their damages claim, because "[t]he amount of damages will require a factual inquiry and determination as to [breach].").[1]

In sum, Defendant's counterclaim consists of a cognizable breach of contract claim supported by sufficient factual allegations to give Plaintiff fair notice of the claim and to satisfy the plausibility standard. An alleged contradiction between Defendant's answer and counterclaim does not merit dismissal. The lack of factual detail sought by Plaintiff can be addressed through discovery and does not warrant dismissal.

## III. CONCLUSION

For the foregoing reasons, Plaintiff's motion to dismiss Defendant's counterclaim (Dkt. No. 36) is DENIED.

DATED this 6th day of June 2019.

John C. Coughenour
UNITED STATES DISTRICT JUDGE

---

[1] Plaintiff also argues that dismissal is proper because Defendant failed to specify the stores or promotional materials related to the alleged breach. (*See* Dkt. No. 36 at 5–6.) Discovery is often a necessary component of factual development and case theory, and parties have a right to discovery. *See generally* Fed. R. Civ. P. 26; *see Doe v. Puget Sound Blood Ctr.*, 819 P.2d 370, 376 (Wash. 1991). Prior to the Court's consideration of dismissal, Defendant must be given a "reasonable opportunity to complete discovery and to present necessary factual support for their [claim]." *Lucas v. Bechtel Corp.*, 633 F.2d 757, 758–59 (9th Cir. 1980). Defendant's failure to identify the stores or materials related to their counterclaim may be remedied with discovery. Such discovery is currently underway and must proceed before considering dismissal. (*See* Dkt. Nos. 39, 39-2.)